# United States District Court

FOR THE
**NORTHERN DISTRICT OF CALIFORNIA**

VENUE: SAN FRANCISCO

FILED

OCT 18 2017

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

V.

NIPPON CHEMI-CON CORPORATION,

CR 17 540 MMC

DEFENDANT(S).

## INDICTMENT

VIOLATION: 15 U.S.C. § 1 – Price Fixing

A true bill.

Gregory D. Smith

Foreman

Filed in open court this 18th day of

October.

Clerk

Bail, $ Summons

NANDOR J. VADAS

AO 257 (Rev. 6/78)

# DEFENDANT INFORMATION RELATIVE TO A CRIMINAL ACTION - IN U.S. DISTRICT COURT

BY: ☐ COMPLAINT ☐ INFORMATION ☒ INDICTMENT ☐ SUPERSEDING

Name of District Court, and/or Judge/Magistrate Location

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

## OFFENSE CHARGED

Count One: 15 U.S.C. §1 - Price Fixing (Count 1)

☐ Petty
☐ Minor
☐ Misde-meanor
☒ Felony

PENALTY: See attachment

FILED

OCT 18 2017

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

## DEFENDANT - U.S

Nippon Chemi-Con Corporation

DISTRICT COURT NUMBER CR 17 540 MMC

## PROCEEDING

Name of Complainant Agency, or Person (& Title, if any)

Federal Bureau of Investigation

☐ person is awaiting trial in another Federal or State Court, give name of court

☐ this person/proceeding is transferred from another district per (circle one) FRCrp 20, 21, or 40. Show District

☐ this is a reprosecution of charges previously dismissed which were dismissed on motion of: ☐ U.S. ATTORNEY ☐ DEFENSE — SHOW DOCKET NO.

☐ this prosecution relates to a pending case involving this same defendant — MAGISTRATE CASE NO.

☐ prior proceedings or appearance(s) before U.S. Magistrate regarding this defendant were recorded under

Name and Office of Person Furnishing Information on this form: Jacklin Lem, DOJ-Antitrust

☐ U.S. Attorney ☒ Other U.S. Agency

Name of Assistant U.S. Attorney (if assigned)

## DEFENDANT

### IS *NOT* IN CUSTODY

1) ☒ Has not been arrested, pending outcome this proceeding. If not detained give date any prior summons was served on above charges

2) ☐ Is a Fugitive

3) ☐ Is on Bail or Release from (show District)

### IS IN CUSTODY

4) ☐ On this charge

5) ☐ On another conviction } ☐ Federal ☐ State

6) ☐ Awaiting trial on other charges

If answer to (6) is "Yes", show name of institution

Has detainer been filed? ☐ Yes ☐ No } If "Yes" give date filed

**DATE OF ARREST** Month/Day/Year

Or... if Arresting Agency & Warrant were not

**DATE TRANSFERRED TO U.S. CUSTODY** Month/Day/Year

☐ This report amends AO 257 previously submitted

## ADDITIONAL INFORMATION OR COMMENTS

PROCESS:

☒ SUMMONS ☐ NO PROCESS* ☐ WARRANT Bail Amount:

If Summons, complete following:

☒ Arraignment ☒ Initial Appearance

Defendant Address:

5-6-4, Osaki, Shinagawa-ku, Tokyo 141-8605, Japan

** Where defendant previously apprehended on complaint, no new summons or warrant needed, since Magistrate has scheduled arraignment*

Date/Time: Nov 8th, 2017 9:30 AM Before Judge: Joseph C. Spero

Comments:

E. KATE PATCHEN (NYRN 4104634)
JACKLIN CHOU LEM (CABN 255293)
U.S. Department of Justice
Antitrust Division
450 Golden Gate Avenue
Box 36046, Room 10-0101
San Francisco, CA 94102
Telephone: (415) 934-5300
jacklin.lem@usdoj.gov

Attorneys for the United States

FILED

OCT 18 2017

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

UNITED STATES OF AMERICA

v.

NIPPON CHEMI-CON CORPORATION,

Defendant.

CR No. 17 540 MMC

VIOLATION: 15 U.S.C. § 1
Price Fixing

INDICTMENT

The Grand Jury charges that:

I. DESCRIPTION OF THE OFFENSE

1. NIPPON CHEMI-CON CORPORATION ("defendant") is made a defendant on the charge stated below.

2. From at least as early as September 1997 and continuing until in or about January 2014, the exact dates being unknown to the Grand Jury, in the Northern District of California and elsewhere, the defendant and co-conspirators knowingly entered into and

engaged in a combination and conspiracy to suppress and eliminate competition by fixing prices and rigging bids for electrolytic capacitors in the United States and elsewhere.

3. The charged combination and conspiracy consisted of a continuing agreement, understanding, and concert of action among the defendant and co-conspirators, the substantial terms of which were to fix prices and rig bids for electrolytic capacitors. The combination and conspiracy engaged in by the defendant and co-conspirators was in unreasonable restraint of interstate and foreign trade and commerce in violation of Section 1 of the Sherman Act (15 U.S.C. § 1).

## II. BACKGROUND

4. Capacitors, also known as condensers, are a fundamental component of electrical circuits and are used primarily to store and regulate electrical current. Electrolytic capacitors, including aluminum and tantalum types, are a major subcategory of capacitors. Electrolytic capacitors are found in many products that use electricity, run on a battery, or plug into a socket. Desktop and notebook computers, flat-screen televisions, DVD players, video and still digital cameras, gaming systems, car engine and airbag systems, home appliances, office equipment, and motherboards and other printed circuit boards are some of the products that contain electrolytic capacitors.

## III. DEFENDANT AND CO-CONSPIRATORS

5. During the time period covered by this Indictment, defendant, a corporation organized and existing under the laws of Japan, manufactured electrolytic capacitors sold in the United States and elsewhere.

6. Various business organizations and individuals, not made defendants in this Indictment, participated as co-conspirators in the offense charged in this Indictment and performed acts and made statements in furtherance of it. During the time period covered by this Indictment, defendant's co-conspirators included business organizations that manufactured electrolytic capacitors sold in the United States and elsewhere.

7. Whenever in this Indictment reference is made to any act, deed, or transaction of any business organization, the allegation means that the business organization engaged in

the act, deed, or transaction by or through its officers, directors, agents, employees, or other representatives, or by or through the officers, directors, agents, employees, or other representatives of its majority-owned and controlled subsidiaries, while they were actively engaged in the management, direction, control, or transaction of its business or affairs.

## IV. MEANS AND METHODS OF THE CONSPIRACY

8. For the purpose of forming and carrying out the charged combination and conspiracy, the defendant and co-conspirators did those things that they combined and conspired to do, including, among other things:

a) defendant and co-conspirators participated in meetings, conversations, and communications with each other in various locations, including in the United States, to discuss prices and bids for electrolytic capacitors;

b) defendant and co-conspirators agreed during various meetings, conversations, and communications to fix, increase, maintain, and stabilize prices and rig bids of electrolytic capacitors;

c) defendant and co-conspirators collected, exchanged, monitored, and discussed information on prices, bids, sales, supply, demand, shipping, and the production of electrolytic capacitors for the purpose of reaching agreements on prices and bids and monitoring and enforcing adherence to the collusive agreements reached;

d) defendant and co-conspirators authorized, ordered, and consented to the participation of subordinate employees in the conspiracy;

e) defendant and co-conspirators negotiated prices, submitted bids, and issued price announcements for electrolytic capacitors in accordance with the collusive agreements reached;

f) defendant, as well as co-conspirators, issued price announcements and instructions to sales offices in the United States and elsewhere for electrolytic capacitors in accordance with the collusive agreements reached;

g) defendant and co-conspirators manufactured electrolytic capacitors in accordance with the collusive agreements reached;

h) defendant and co-conspirators sold, distributed, and accepted payments for electrolytic capacitors at collusive, noncompetitive prices and bids in accordance with the collusive agreements reached; and

i) defendant and co-conspirators took steps to conceal the conspiracy and conspiratorial meetings, conversations, and communications through various means, such as using code names to refer to co-conspirators, limiting and discouraging retention and distribution of documents reflecting conspiratorial contacts, and providing misleading justifications for prices and bids provided to customers to cover up their collusive conduct.

These means and methods of the conspiracy all involved electrolytic capacitors sold to customers located within the United States and elsewhere, including to customers that manufactured and/or sold in the United States, under major United States and other brands, significant quantities of electronic goods containing electrolytic capacitors, such as computers, televisions, and gaming systems.

## V. <u>TRADE AND COMMERCE</u>

9. During the time period covered by this Indictment, defendant and co-conspirators manufactured electrolytic capacitors in the United States and elsewhere and sold them in the United States and for delivery to the United States. The charged combination and conspiracy involved trade or commerce within the United States and U.S. import trade or commerce in electrolytic capacitors.

10. During the time period covered by this Indictment, defendant and co-conspirators also sold foreign-manufactured electrolytic capacitors outside the United States for incorporation into other products, including computers, televisions, and gaming systems, that were sold in and for delivery to the United States. The charged combination and conspiracy had a direct, substantial, and reasonably foreseeable effect on trade or commerce within the United States or U.S. import trade or commerce in these electrolytic capacitor-containing products, and that effect, in part, gives rise to this charge.

11. During the time period covered by this Indictment, defendant and co-conspirators sold and shipped for delivery to customers substantial quantities of electrolytic capacitors in a continuous and uninterrupted flow of interstate and U.S. import trade or commerce from locations in the United States and foreign countries to locations in various states in the United States, including states other than where the electrolytic capacitors were manufactured.

12. During the time period covered by this Indictment, the business activities of defendant and co-conspirators that are the subject of this Indictment were within the flow of, and substantially affected, interstate and U.S. import trade or commerce. During the time period covered by this Indictment, the charged combination and conspiracy had a substantial and intended effect in the United States, including on trade or commerce within the United States and U.S. import trade or commerce in electrolytic capacitors and products containing electrolytic capacitors.

//

//

//

//

//

//

//

//

//

//

//

//

//

//

//

ALL IN VIOLATION OF TITLE 15, UNITED STATES CODE, SECTION 1.

Dated: 10-18, 2017.

A TRUE BILL.

FOREPERSON

MAKAN DELRAHIM
Assistant Attorney General

E. KATE PATCHEN
Chief, San Francisco Office

MARVIN N. PRICE, JR.
Acting Deputy Assistant Attorney General

JACKLIN CHOU LEM
ALEXANDRA J. SHEPARD
HOWARD J. PARKER
PARADI JAVANDEL
MIKAL J. CONDON
CHRISTOPHER J. CARLBERG
Trial Attorneys

MICHELLE O. RINDONE
Acting Director of Criminal Enforcement

Antitrust Division
U.S. Department of Justice

BRIAN STRETCH
United States Attorney
Northern District of California